UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL LAKES,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BATH AND BODY WORKS, LLC,<br><br>　　　　　Defendant. | No. 2:16-cv-2989 MCE GGH<br><br>ORDER RE MOTIONS TO COMPEL |

*Introduction and Summary*

　　　　Plaintiff has brought a second motion to compel discovery (ECF 64), and defendant has brought its first (ECF 58). The parties utilized one joint statement for both motions, yet unfiled, and this order will likewise address both motions. For the reasons that follow, plaintiff's motion is granted in part and denied in part; defendant's motion is denied with the exception of one in-court representation by plaintiff's counsel.

　　　　The undersigned will not issue a sealing order for the yet-to-be- filed Joint Statement.

*Background Facts*

　　　　The parties each do their best to convince the undersigned that each should win the case. However, for the purposes of these discovery motions, the undersigned will use the more sterile recitation of facts which were set forth in the Order following plaintiff's initial motion to compel.

////

ECF No. 40. Facts pertinent to each disputed issue will be set forth in each section herein as necessary.

Plaintiff sues for damages arising from an incident in which a candle sold by Defendant "exploded" when she attempted to put it out, splashing and burning her with the melted, molten wax, inflicting what she characterizes as significant injuries and permanent scarring. ECF No. 2 at 9. In an action originally filed in Sacramento Superior Court which was removed to this court on diversity jurisdiction, 28 U.S.C. section 1332, id. at 2, she states claims for general negligence, id. at 9, and products liability, id. at 10, and seeks recovery of general and exemplary damages. Id. at 11. Plaintiff does not specifically allege whether claims are based upon a theory of product design or product manufacture, but she does claim failure to warn of the potential danger in the use of the candle. Id. at 12-13. The specific product at issue is described as "a three-wick Bath & Body Works Aromatherapy – Eucalyptus Spearmint scented candle purchased through Amazon.com. ECF 2 at 18.

To make a long order short (ECF 40), after conducting a proportionality analysis, the undersigned required production of information related to three wick candles in general that were manufactured or distributed by defendant. Most relevant to the issues here, defendant was required to produce information related to flaring or explosion of candles, referred to by defendant as "flash-overs." That last term will be used as the universal reference for the candle problems alleged in this case.

Part of the production by defendant herein included a spread sheet or chart listing 1,283 potential candle flash-over incidents (perhaps containing some "high flames" incidents as well) since 2005. Many of the disputed issues raised by plaintiff's motion that is resolved in this order directly or indirectly revolve around that chart.

*Discussion*

The undersigned will discuss all issues, but in an order which makes more sense in light of the rulings herein, i.e., some later issues depend in part or in whole on the resolution of the issues first discussed.

////

A. SEA Reports

SEA is a firm hired by defendant to analyze reports that were generated from consumer complaints involving candle fires or flash-overs. According to plaintiff, discovery has indicated so far that when a person called into a Bath and Body call center with a complaint about a candle's flash-over incident a scripted response was given, the generic substance of which was -- such an incident has never occurred with this candle, but could you give us more information about your incident. The information (sometimes ultimately including pictures and the candle itself) was given to corporate officials who then forwarded the information to its lawyers, who then retained the forensic engineering firm, SEA. Reports regarding each incident were then generated by SEA. See Osterman Declaration, Exhibit 11.[1]

These reports, as produced to plaintiff, contained nothing but redactions for the most part, i.e., no information was given. However, the production was not consistently redacted, and some few reports contained more or less information about the analysis of a particular candle incident.

Defendant claims that all the SEA reports are protected by the attorney work product doctrine because the information transmitted to SEA was transmitted "in anticipation of litigation." It does appear from the facts, however, that any flash-over complaint received by defendant was sent off to SEA regardless of the imminence or reality of any litigation. Plaintiff recounts one example where an attorney initiated retention of SEA was undertaken where the complainant specifically told the information gatherers that she was not going to sue anyone.

Work product is not a "privilege," but is rather a doctrine initially created by the courts to protect the industry of counsel who were preparing their client's cases for trial or other proceeding. See Admiral Ins. Co. v USDC, Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989). The party seeking work product immunity has the burden of demonstrating the conditions for its application. Phillips v. C.R. Bard, Inc., 290 F.R.D. 615, 634 (D.Nev. 2013). There are two types of work product: the less protected factual investigations ("qualified"), and the more protected

---

[1] The undersigned is unsure about whether every consumer complaint with any significant information was given to SEA. It does appear, however, that transmission to SEA by a lawyer was a routine event for most complaints containing information that could be analyzed.

3

attorney thought processes themselves (sometimes referred to as "absolute"). Only qualified immunity is at issue here. However, the *sine qua non* for *any* work product immunity is that the information for which protection is sought was acquired by the transmitting attorney *in anticipation of litigation*.

The courts are not completely uniform in their determinations of what circumstances must exist in order for investigations of facts can be found to have been "made in anticipation of litigation." It is nonetheless clear that, at one end of the spectrum, investigations mandated by law or even company policy are not protected regardless of whether the information might later see the light of day in litigation. See Miller v. Pancucci, 141 F.R.D. 292, 303 (C.D.Cal. 1992). Investigations specifically commissioned for the purpose of obtaining information for use in a specific litigation are clear work product at the other end of the spectrum. The various standards used for grayer work product situations -- the so called "dual purpose" situations -- are well set forth in Garcia v. City of El Centro, 214 F.R.D. 587, 592-593 (S.D. Cal. 2003). However, the Ninth Circuit has spoken to the standard to be utilized in dual purpose situations, and that is the standard which will be used herein:

> To qualify for work-product protection, documents must: (1) be "prepared in anticipation of litigation or for trial" and (2) be prepared "by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (2004). In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the "because of" test is used. *Id*. Dual purpose documents are deemed prepared because of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id*. In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the " 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.' " *Id*. at 908 (quoting *United States v. Adlman*, 134 F.3d 1194 (2d Cir.1998)).

United States v. Richey, 632 F.3d 559, 567-568 (9th Cir. 2011)

Clearly, despite the conclusion of counsel, Exhibit 11, the SEA reports cannot be viewed to have been created "because of" litigation. Simply because the potential for litigation is "in the

4

1 | air" or remotely forseeable does not give rise to anticipation of litigation. Phillips, supra, 290
2 | F.R.D. at 635. As set forth above, it appears that the references to SEA were routinely (and
3 | perhaps for laudable reasons) made for the business purpose of simply investigating the possible
4 | flash-over of a candle regardless of the potential for litigation. As plaintiff points out, at least one
5 | complainant referred to SEA for analysis disclaimed any intent to file litigation. The reference to
6 | SEA has all the earmarks of a business policy to ensure that every reference to SEA was made at
7 | the rubber stamp, behest of counsel — just to cover the remote chance litigation would arise, and
8 | to attempt to ensure that all investigations could be undertaken with the cloak of work product
9 | secrecy. Exhibit 11 does not indicate in any way the percentage of complaints which ultimately
10 | resulted in litigation, and the undersigned finds the lack of this information telling. Indeed,
11 | drawing an adverse inference from the lack of this important information, it appears probable that
12 | the vast majority of incidents never saw the inside of a courthouse; the complainants were given a
13 | gift card or refund and such was the end of the matter. It appears that the preeminent reason for
14 | referring *every* incident to SEA, or at least the number that were referred, was to monitor the Bath
15 | and Body candle design/manufacture or distribution. This is predominantly a business policy, not
16 | the real anticipation of litigation. To place this issue in the words of the case relied upon by
17 | defendant's counsel for the "anticipation of litigation" issue, the SEA reports are not "permeated"
18 | with a created-for-litigation reason. See In re Grand Jury Subpoena, 357 F.3d 900, 910 (9th Cir.
19 | 2004). The SEA reports should be produced.
20 |      Even if the court has not correctly assessed the "anticipation of litigation" issue, the
21 | undersigned ultimately finds that this qualified work product immunity should be negated
22 | because of the needs of the litigation. Qualified work product may be discovered regardless of its
23 | confirmed status as work product. "The party seeking the qualified work product has the burden
24 | of demonstrating a 'substantial need' for the qualified work product, as well as an inability to
25 | obtain the information from other sources without undue hardship. Doubleday v. Ruh, 149
26 | F.R.D. 601, 607 (E.D. Cal. 1993) *citing* Upjohn Co. v. United States, 449 U.S. 383, 400 (1981);
27 | see also O'Connor v. Boeing North American, Inc., 216 F.R.D. 640, 642 (C.D. Cal. 2003).
28 | ////

A critical issue in this litigation is why candle flash-overs occur. Plaintiff was given a list of 1,283 candle flash-over incidents. In order to fully understand the nature of the circumstances leading to the flash-overs in other cases compared to the one involved in this case, plaintiff's counsel would have to undertake his own study such as performing tests of aged candle remnants, and/or conducting witness interviews to determine what has been historically determined by defendant already. The cost involved would be enormous. Moreover, although the candle involved in this case is a three wick candle, and to the extent some of the 1,283 incidents involve other types of candles, there has been no dispositive factual finding that incidents involving other candle types are irrelevant. The undersigned initially limited discovery to three wick candles because of a burden argument proffered by defendant in opposing the first Motion to Compel; but there was no finding that flash-over incidents involving other candles were useless in establishing a defect or causation in this case. Indeed, it could turn out that the number of wicks has little to do with flash-overs. Moreover, if there is a common causation theme involving candle flash-overs, and defendant has done little or nothing to prevent them, such is grist for the punitive damages argument mill. Finally, it is beyond the undersigned's comprehension that defendant would not make the SEA reports available to its testifying experts for their analysis -- whether to proclaim their reliance on other candle incidents as a valid comparison here, or a disclaimer of such as unimportant or immaterial. Cross-examination of defendant's experts should not take place in the blind.

Plaintiff does have a substantial need for the information in the SEA reports, and it is, for practical purposes, otherwise unavailable to plaintiff. The redacted SEA reports, whether redacted in whole or in part, shall be unredacted and produced to plaintiff within 20 days of the filed date of this order.

B. Three Year Study

Evidently, BBW conducted a three year study of serious candle incidents, including flash-overs and fires. It was not entirely clear that the Study was produced, but plaintiff does concede at one point that the study was belatedly produced on April 18, 2018. Joint Statement at 17, para. 7. But see the indication in the Joint Statement at 11 and 13 that much of the underlying support

for the study was not produced although BBW continues to try to put this support together. BBW does not contend that production of the Study is inappropriate, nor does it contend that producing the underlying documentation is appropriate.

The court orders production of the Study, if it has not already been produced, together with all documentation underlying the report, i.e., information that was used as a basis for the Study. Further, all emails, and written communications of any sort created by Steven Smith or other highly placed corporate officials commenting on the Study shall be produced in *unredacted* form except where the attorney-client privilege is involved.[2] The production shall take place no later than 20 days from the filing date of this Order.

Plaintiff shall not contact individuals described in the report unless and until the court so orders.

C. "High Flames" Claims

This case involves a candle "flash-over" or explosion. Plaintiff now sees a need for claims information involving nothing more than candle "high flames." Even if high flames are a precursor to flash-over incidents, and the parties do not indicate that relationship, in accordance with the proportionality analysis set forth in the initial motion to compel order, the court would decline to authorize discovery into this seemingly, marginally pertinent area.[3] Defendant disputes that this information was required pursuant to any previous discovery request and

---

[2] A Protective Order is in place in this case. If defendant believes that privacy interests, or proprietary interests are involved in producing the Study and its underlying documentation, such can be marked confidential. The undersigned does not know of authority for the proposition that one party may unilaterally decide to redact substantive information in documents otherwise subject to production, except in cases involving the communication of attorney-client and other established privileges applicable to defendant. Certainly, any redaction based on privilege would have to be accompanied by a privilege log. Again, redactions based on privacy or proprietary information shall not be done, but documents containing that information can be made subject to the Protective Order.

[3] Plaintiff argues: "Shortly before the parties filed this Joint Statement, Defendant produced an updated spreadsheet that purported to identify "high flame" complaints. But defendant has not produced any of the claims documents relating to the "high flames" complaints." Joint Statement at 11. However, no analysis appears concerning why claims information regarding high flames would have anything significant to do with this case. The fact that plaintiff received information about high flames incidents, i.e., more information which was initially requested, does not require further discovery into that unrequested area of inquiry.

expends some effort to demonstrate the lack of relevance of such a request. In addition, plaintiff does not refer to the discovery request where "high flames" incidents were requested.

However, nothing is easy in this discovery motion, and although disputing the relevance of "high flame" incidents, defendant ultimately responds: "In spite of its irrelevance to the case at hand, and in spite of the recent timing of Plaintiff's request, [defendant] will agree to search for claims information relating to high flames incidents and should be given an opportunity to do so." Joint Statement at 15.

Therefore, defendant shall produce such "high flames" claims reports within 20 days of the filed date of this order.[4]

D. Mediation/Settlement Agreements

Defendant has produced information regarding six lawsuits, other than the case-at-bar, involving flash-over incidents. However, settlement agreements for those cases have not been produced.

Defendant does not raise a "mediation privilege" objection to production of these settlement agreements. Rather, defendant merely cites to Fed. R. Evid. 408 which precludes settlement agreements as evidence in a case. However, defendant does not have the authority to waive such a mediation privilege (if it exists) for all the parties to other settlement agreements absent an express agreement of the parties to the litigation. Therefore, the undersigned must discuss it.

In the previously issued Claw-Back Order, ECF. No. 68, the undersigned fully discussed the mediation (settlement) privilege in this diversity case. California law applies, and in footnote 3, the undersigned quoted the section of law governing disclosure of mediation/settlement agreements. Cal. Evid. Code § 1123. An express waiver by the parties is required for disclosure of such agreements except in cases where the agreement itself is evidence of fraud or a crime with respect to the "issue in dispute."

---

[4] At hearing, the undersigned was not focused in on the concession of defendant to produce the "high flames" claims information. This written order supersedes anything the undersigned may have stated at hearing.

8

The undersigned will not engage in a choice of law analysis for any and all settlement agreements no matter where accomplished. Nor have the parties given such settlement agreement locale information to the court. Therefore, Section 1123, the law of the forum, will be held to govern this discovery request in its entirety. The undersigned finds that to the extent any "settlement agreements" arose out of a mediation-type proceeding, they are immune from discovery.

"Mediation" is a term "which can take many forms." <u>Wimsatt v. Superior Court</u>, 152 Cal. App 4th 137, 150 (2007). A mediation is generally any type proceeding, hosted by a neutral, mediator, or other dispute resolution person however titled, designed to negotiate a mutually acceptable resolution outside the confines of a determinative civil or administrative action. <u>See Saeta v. Superior Court</u>, 117 Cal. App. 4th 261, 271 (2004) and Note 3: "Petitioner is correct to the extent he asserts that mediation is a broad term encompassing a wide range of formats." Certainly, a settlement conference, hosted by a judge not assigned to the case, and who will have no authority to determine the case as other than to help negotiate an agreed upon resolution, meets every definition of the California mediation provisions. Thus, to the extent the parties to the settlement agreement reached such agreement as a part of a mediation or settlement conference, the provisions of Section 1123 apply.

Pursuant to Section 1123, plaintiff would have to show, in order for the settlement agreements to be discoverable, that the agreement was reached as a fraud or deceit in the action in which it was negotiated. Plaintiff has gone no distance in this inquiry. Although plaintiff presents evidence in *this* litigation regarding company sponsored deceitful practices by persons in defendant's call center, no factual attempt to link that deceit with the other cases' *resolutions* has been made.[5] Indeed, settlement agreements outside of consent decrees nearly invariably contain provision that neither party was at fault, and neither party is making admissions. Such a provision on its face would seem to preclude discovery of the agreement as fraudulent per se

---

[5] In the earlier "Claw-Back" motion, plaintiff argued that the mediation brief at issue demonstrated deceit. However, the brief would not necessarily entail the actual reasons for settlement.

9

without convincing evidence to the contrary -- evidence which has not been produced for any other settlement agreement. The undersigned is at a loss to see how, on the present record, the other settlement agreements themselves, if privileged, would ever see the inside of a courtroom in this case as a result of its having been proven fraudulent.

Even if California law were not to apply, and there was no prohibition per se from discovering such agreements, the relevance of such to this litigation is difficult to decipher. The facts and circumstances underlying the other litigations may be entirely different from those of the instant case. For example, there may have been great comparative fault on the part of the plaintiff or the causative agent for any candle mishap may have been completely different from that yet to be announced here. The reasons for settlement and amount of settlement will not be disclosed in the agreement, and even if they could be divined, may well have no discernable significance with any issue in this case. That is, aside from the substantive facts of the case itself, did the case settle because of a unique procedural problem, e.g., statute of limitations? Did the plaintiff simply grow weary of the struggle or run out of money to fund it? Was plaintiff's counsel very sophisticated? Moreover, would Federal Rule of Evidence 408 preclude admissibility of the agreement in this case even if a similarity of facts could be shown? While, of course, the touchstone in discovery is not admissibility of evidence, but rather facts which might lead to admissible evidence, Fed. R. Civ. P. 26(b)(1), the court can eye the extreme unlikelihood of admissibility in determining whether it is worth it to allow discovery of the agreements with all the potential attendant admissibility problems. Miller v. Pancucci, supra 141 F.R.D. at 296.

Plaintiff's motion is denied in this respect of seeking settlement resolutions.

E. Further Rule 30(b)(6) Deposition

Plaintiff desires to continue the deposition of Steven Smith, or another deponent, regarding issues including design, manufacture, testing, etc. of defendant's candles. The further deposition is necessary, plaintiff argues, because production of documents was delayed past court deadlines, which was accomplished, in part, just before the Smith deposition took place. Importantly, BBW's "Three Year Study" of serious candle incidents was not produced prior to

////

the deposition, and supporting documentation underlying that study have not been produced to date.

This corporate designee was deposed for approximately 11 hours, some four hours in excess of the presumed 7 hour presumption. The undersigned is cognizant of defendant's colorable "enough is enough" argument. And the court recognizes the case law cited in defendant's briefing which finds that the presumptive 7 hour limit should generally be enough deposition time. However, where discovery has been produced sequentially and after the deposition at issue, or not at all, important topics remain unexplained. Moreover, defendant's argument that plaintiff can contact the claimants at any time is somewhat inconsistent with defendant's insistence that privacy rights of third parties must be respected. See Joint Statement (initial Motion to Compel), ECF No. 36.

Therefore, a continued Rule 30(b)(6) deposition may be taken for an additional four hours. The topics are to be limited to discovery produced since the first deposition concluded, or unanswered questions on discovery production which preceded the first deposition. Questioning simply designed to elicit inconsistent responses with those responses given in the first deposition is expressly not permitted.[6] No questions should be asked which seek to elicit information that this court has found to be non-discoverable because of the mediation privilege.

The deposition shall take place within the next thirty days from the filed date of this order at the general city location of the deponent's ordinary place of business, or another location stipulated to by the parties.

F. Remaining Plaintiff Issues -- E-mail Notifications to Smith or other Corporate Officers Regarding Candle Flash-Over Incidents

Finally, plaintiff believes that Mr. Smith (or another corporate executive, Tom Mazurek) had many more emails in their possession regarding referral of flash-over incidents from defendant's call center. The evidence thus far in this case is that when a flash-over incident was

---

[6] Of course, newly produced discovery may elicit different responses from those given before. The court is simply prohibiting repetitive questions to those areas fully answered before (whether or not plaintiff liked the answers)

received by defendant's call center, an e-mail notifier was sent to Mr. Smith, or in a few cases another person. However, many, if not most, of the email notifiers themselves received by Smith et. al. have not been produced.

Defendant responds that it has produced over 50,000 pages of discovery (although some of that is simply redacted in whole or in part), including a 600 page spread sheet related to other candle incidents. To the point, defendant posits: "The [e-mail] notifiers are entirely duplicative of what has been produced to Plaintiff when BBW produced the entire contents of its call center database. Producing the notifiers is not going to lead to the production of new or different admissible evidence…[defendant] has not gone through the process of recreating the notifiers in their email forms. To comply with Plaintiff's current request would be burdensome and disproportionate to the needs of the case." Joint Statement at 12.

The undersigned has not been presented with any evidence at the time of finalizing this Order which would cause him to doubt the representation by defendant's counsel. And, in light of the copious discovery produced thus far, as well as the more probative SEA reports of other incidents to be produced as set forth in this Order, the undersigned declines to order defendant to chase its tail in discovery for no apparent salutary purpose.

G. Defendant's Motion to Compel

Defendant makes several requests to compel production, but never references any discovery request or previous court order requiring disclosure. Rather, it appears that all requests for information or documents at issue were informally made at deposition. Long ago, the undersigned found that such informal requests for discovery could not be a basis for a motion to compel:

> The local litigation culture often utilizes informal requests to produce documents which are made at depositions, and most times these informal requests are honored. Nevertheless, Americable's informal request for production of documents made at a deposition is not recognized as an appropriate discovery request under the federal rules, i.e., such a discovery vehicle does not exist under the Federal Rules of Civil Procedure. Americable's motion to compel is thus inappropriate and is denied for this reason.

Roberts v. Americable Intern., Inc., 883 F.Supp. 499, 501 (n.2) (E.D. Cal. 1995). Other cases have uniformly adhered to this proposition. See e.g. Simon v. Taylor, 2014 WL 6633917 *1, *8 (D.N.M. 2014); Heilman v. Silva, 2015 WL 1632693 *11 (S.D. Cal. 2015).

Defendant's discovery motion herein shows the difficulty with informal requests. An issue in the case assertedly involves the timing of plaintiff's retention of a lawyer—Darby. At deposition, plaintiff testified that Darby was retained after October 19, 2015, and that she disposed of unused candles sometime after that. Apparently, defendant was not satisfied with the answer under oath, and wanted a precise date of retention, and made an informal request at deposition followed up by an email or letter. An email response was received from plaintiff's present litigation counsel saying that the date of retention was no later than October 19. Still unhappy with the now inconsistent answer, defendant wants a third shot at getting another response and a second unverified, informal response. But what is the court to do—order Darby himself to answer, or get another hearsay response? -- find the conflicting answers to be incorrect? That is the problem with informal requests. This one is denied.

Similarly, no request for production under the Federal Rules has been made for pictures or social media regarding plaintiff's injuries, or in the alternative, access to plaintiff's Facebook account. Plaintiff disputes that there has never been a meet and confer on this informally requested issue, and no protocol for access to a social media account has been established. This informal request is denied.

Finally, plaintiff's counsel gave an on-the-record answer in open court regarding medical expenses occasioned by the candle incident. On the record representations in court are binding. However, if there are other aspects of the informal damages request for production, they are denied.

*Conclusion*

Plaintiff's Motion to Compel, ECF No. 64 is GRANTED IN PART AND DENIED IN PART. Defendant's Motion to Compel, ECF No. 58 is DENIED with the exception that the in-court representation regarding medical expenses is binding. The undersigned will not repeat all individual orders set forth for each discrete discovery dispute. They are incorporated herein. Any

motion to reconsider on a particular issue herein will not delay production or disclosure for other issues for which reconsideration is not sought.

Defendant has made a sealing request for portions of the Joint Statement. ECF No. 65. However, the court finds the references to the mediation agreement so general as to negate the need for sealing, and the other requests for sealing (argumentative statements of counsel) lack good cause. The entire Joint Statement, including exhibits, shall be filed and linked to the Motions to Compel within ten days of the filed date of this Order.

**IT IS SO ORDERED**

Dated: May 24, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE