UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL LAKES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BATH & BODY WORKS, LLC, a Delaware limited liability company,<br><br>Defendant. | No. 2:16-cv-02989-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Crystal Lakes ("Plaintiff") alleges that a candle manufactured by Defendant Bath & Body Works, LLC ("BBW") malfunctioned such that she sustained burns from molten wax. Plaintiff filed her lawsuit in state court as a California resident, and BBW subsequently removed the action to this Court, citing diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) between Plaintiff, a California resident, and BBW, a Delaware corporation with its principal place of business in Ohio.

Presently before the Court is BBW's Motion to Apply Ohio Law to Plaintiff's Punitive Damage Claim. ECF No. 122. According to BBW, in the face of a conflict between California and Ohio law concerning the extent of punitive damages, Ohio law should control because the circumstances of this matter show little, if any, California

1

involvement suggesting that California law should apply. As set forth below, BBW's Motion is DENIED.

**BACKGROUND**

On October 15, 2015, Plaintiff was burned by a three-wick aromatherapy candle that she lit some thirty minutes beforehand at her home in Dominical, Costa Rica. According to Plaintiff, she saw the candle "flash over" with flames shooting some seven to ten inches from the rim of its glass container. Dep. of Crystal Lakes, 61:4-64:23. After unsuccessfully trying to blow the candle out, and as she tried to pick the candle up, Plaintiff heard a "popping noise" and became aware than her hands had been burned by molten wax. Id. at 65:20-67:24.

Plaintiff had been living back and forth between Newcastle, California, and Costa Rica for several years and, while she described herself as essentially living "full time" in Costa Rica during 2015 and 2016, it also appeared that she had been travelling regularly between Northern California and Central America. Plaintiff's domestic partner, Michael Parker, Jr., operated a mineral processing/liquid solid separation business named Tons Per Hour, Inc. that was apparently headquartered in California. Beginning in 2013, after the business established an additional office in Costa Rica, Plaintiff and Parker began travelling back and forth between California and Costa Rica.

While in California, the couple continued to live in a house located in Newcastle, where they had resided together since 2010. According to Plaintiff's Declaration, between April 2013 and April 2016 she made some 14 separate trips between Costa Rica and California, staying at a house in Dominical while in Costa Rica and continuing to live at the same house in Newcastle when in the United States. Pl.'s Decl., ECF No. 132-9, ¶ 11. Nonetheless, in 2015 and 2016 it appears that the couple spent most of their time in Costa Rica and considered Costa Rica to be their primary residence during that time period.

On September 20, 2015, Plaintiff flew from San Juan, Costa Rica, to Sacramento (via Houston, Texas) where she lived in the same Newcastle house for approximately three weeks until she returned to Costa Rica on October 9, 2015.  During this stay, on September 30, 2015, Plaintiff ordered four BBW aromatherapy candles, including the candle implicated in the October 15, 2015 incident, that were delivered to her in California on or about October 3, 2015.

The treatment Plaintiff initially obtained in Costa Rica consisted of the application of an antibiotic burn cream she obtained from a local pharmacy.  Plaintiff applied the cream to both hands and used gauze bandages for approximately six weeks.  On February 15, 2016, she returned to California and was seen on February 26, 2016, by an internist, Dr. Norman Panting, at the request of her attorney.  Dr. Panting referred Plaintiff to the University of California, Davis, Medical Center Burn Clinic for a follow-up visit on March 16, 2016.  According to Plaintiff, she returned to California permanently on April 16, 2016, and has lived there since.

In now requesting that the Court apply Ohio law with respect to the availability of punitive damages at trial, BBW claims that the injury-producing candle was designed, manufactured, and tested in Ohio by a business principally located in Ohio.  BBW further avers that its alleged knowledge of repeated instances of "flare up" instances concerning the three-wick candles stemmed from complaints made to BBW's customer call center, also located in Ohio.  BBW argues that California, on the other hand, has virtually no interest in this matter since Plaintiff's injury occurred in Costa Rica while she was living in Costa Rica.

**STANDARD**

In a diversity action like the present matter, this Court sits in California and must apply California choice of law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Choice of law issues in California are determined using the so-called

3

"governmental interest" analysis. That analysis requires three separate determinations: 1) whether the involved states' laws materially differ; 2) if so, whether there is a true conflict with respect to each state's interest in applying its own law; and 3) if a true conflict exists, the relative interests of each jurisdiction are weighed, and "the law of the state whose interest would be more impaired if its law were not applied" controls. Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1202 (2011). Different states' laws may apply to different issues because a separate conflict of law analysis must be applied to each claim. See Chen v. L.A. Truck Centers, LLC, 7 Cal. App. 5th 757, 767 (2017).

## ANALYSIS

BBW's Motion seeks to apply Ohio law only to Plaintiff's punitive damages claim despite the fact that it is not otherwise contesting the propriety of this venue here in California. See Def.'s Mot., ECF No. 122, 9:19-22, citing Bank Saderat Iran v. Telegen Corp., 30 F. App'x 741, 743 (9th Cir. 2002) ("district court sitting in diversity . . . in California . . . must conduct a separate choice of law analysis with respect to each issue in a case").

BBW correctly points out that there are material differences between the laws of Ohio and California regarding punitive damages. The Ohio legislature has decided to limit punitive damage to two times any compensatory damages award rendered at trial. Ohio Rev. Code Ann. § 2315(D)(2)(a); see Sivit v. Village Green of Beachwood, L.P., 143 Ohio St. 3d 168, 170-71 (2015) (requiring remittitur of punitive damages where they exceeded twice the compensatory award). California, on the other hand, has enacted no statutory cap on punitive damages. Given this clear discrepancy between the appropriate breadth of punitive damages award under Ohio and California law, the two states' treatment of punitive damages unquestionably differs.

Under California's choice of law analysis described above, the Court must next assess whether this difference amounts to a "true conflict" given the competing state

4

interests involved. Plaintiff asserts that BBW's claim for Ohio punitive damages law fails on this issue alone, without even proceeding to whether, based on the "comparative impairment" to either California or Ohio law, one state has a more significant interest in applying its own jurisprudence. Plaintiff cites the decision in Scott v. Ford Motor Co., 224 Cal. App. 4th 1492 (2014) in support of its argument.

Like BBW, the defendant in Scott, a manufacturer of brake parts, argued that because its conduct occurred in Michigan (the brakes contained asbestos, therefore exposing those who worked extensively with the brakes to asbestos-related conditions), Michigan law should control any award of punitive damage even though Scott lived and worked in California and was exposed to the defendant's products in California. Michigan law, unlike California, prohibited punitive damages.

While the Scott court recognized the difference between the two states' laws in finding that a facial conflict in that regard existed, it nonetheless declined to find that any "true" conflict was present. The court reasoned that "[w]hile Michigan has a strong interest in seeing its view of the appropriate policy carried outs in its own courts, it has a correspondingly minimal interest in seeing the same implemented in the courts of California." Id. at 1506. While the defendant claimed that Michigan law reflected "an interest in protecting Michigan-domiciled defendants from excessive financial liability" (id.), Scott found that "Michigan has no interest in shielding its resident corporations from punitive damages when those corporations chose to do business in states permitting the imposition of punitive damages," id. at 1508.

Scott's reasoning applies squarely here. BBW unquestionably manufactured and designed candles to be sold throughout the country, including in places like California where punitive damages are permitted. To the extent BBW made the choice to do business outside of its Ohio hub, Scott stands for the proposition that BBW's decision in that regard overcomes any interest on Ohio's part in protecting resident corporations operating within its borders. As Scott pointed out, it would be nonsensical to permit a defendant "to carry a nationwide shield from punitive damages liability [simply] because

the state in which it maintains its headquarters" has prohibited such damages.  Id. at 1506.  To further illustrate the illogic of any such position, the court remarked that it would be equally ill-advised to expect a court where no punitives are permitted to impose punitive damages on a California-based corporation simply because California has made a different policy judgment in permitting exemplary damages.  Id.

Consequently, this Court follows Scott in finding no "true conflict" present under the facts of this matter.  Even if the Court were to find that a true conflict existed, however, the ensuing "comparative impairment" analysis (for determining whether Ohio or California law has a bigger stake in whether punitive damages should apply) would not produce a different outcome.   This is because BBW understates the California connections in this matter while at the same time downplaying its own decision to manufacture and market products for use throughout the United States, including in jurisdictions like California.

While BBW argues that the only connection with California is that the candle in question happened to ship to a California address on its way to Costa Rica, the truth is not so simple.  The evidence shows that Plaintiff continued to maintain California ties and owned a home here throughout the period in question even if she may have been spending most of her time in Costa Rica at the time the accident occurred.  Her claim that she travelled constantly between Costa Rica and California is underscored by the fact that she ordered the BBW candle while in California, during a three-week period she was staying in California, which period ended just six days before the candle allegedly malfunctioned.  In addition, BBW's claim that she obtained no treatment in California is incorrect, since after returning to California several months after the accident she sought medical evaluation in California at the advice of her attorney and thereafter was seen at the Burn Center of the University of California, Davis, Medical Center, also in California.  Significantly, too, Plaintiff not only maintained the same residence in Newcastle between 2010 and 2016, but since selling that house in early 2016 she has continuously lived in California with the exception of two trips to Costa Rica in early 2017.  All of these facts

point to longstanding California ties both before and after the accident. BBW, on the other hand, argues that given the design and manufacture of the candle in Ohio by an Ohio-headquartered corporation, and since the accident itself occurred in Costa Rica, any California connection is minimal.

Analyzing comparative impairment for choice of law purposes requires the Court to determine which jurisdiction should have the predominant lawmaking authority for the issue at stake as being more "committed" to its laws. See Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1507 (9th Cir. 1993). According to BBW, Ohio's interest in limiting punitive damage awards is to protect "its resident corporations conducting business inside its borders" and to prevent the "financial ruination" of a defendant while at the same time deterring certain conduct. Def.'s Mot., ECF No. 122, 10:15-19, citing Dardinger v. Anthem Blue Cross & Blue Shield, 98 Ohio St. 3d 77, 102 (2002). BBW maintains that under Ohio law, "limit[ing] the amount of punitive damages that can be awarded against a defendant [will] make the civil justice system more predictable." Sivit v. Village Green of Beachwood, L.P., 65 N.E. 3d at 175. BBW further cites Ohio authority supporting the proposition that "such predictability will aid the state economy." Arbino v. Johnson & Johnson, 116 Ohio St. 3d 468, 489 (2007).

California on the other hand, has long expressed its policy desire "to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and other from similar extreme conduct." Scott, 224 Cal. App. 4th at 1504. In that regard "California has long endorsed the use of punitive damages to deter continuation or limitations of a corporation's course of wrongful conduct . . . " Id. California also has a strong interest in ensuring "that the cost of injuries of defective products is borne by the manufacturers that put such products on the market rather than by injured persons who are powerless to protect themselves." Chen v. L.A. Truck Centers, 7 Cal. App. 5th 757, 771 ((2017). California's laws consequently are grounded in policy that both "provide[s] an economic incentive for improved product safety" and "induce[s] reallocation of resources toward safe products." Id. at 772.

1    With these concerns in mind, BBW does not and cannot dispute that it markets
2    and distributes its three-wick candles in California, and to the extent the candles are
3    defective given allegations that BBW does not follow its own "best practices" in
4    manufacturing the candles, California unquestionably has a strong interest in protecting
5    consumers from such behavior.  As indicated above, Plaintiff lived in California at least
6    part of the time both before and after the accident, continued to maintain a home in
7    California, ordered the candle while staying at her California residence for some three
8    weeks just before the accident, and sought treatment for her injuries in California.  Ohio's
9    interest in protecting an Ohio company from punitive damage outside of Ohio, where the
10   company, like BBW here, makes a conscious decision to do business outside of Ohio, is
11   minimal by comparison.  See Scott, 224 Cal. App. 4th at 1508.
12   This district's recent decision in Hill v. Novartis Pharmaceutical Corp., 2012 WL
13   967577 (E.D. Cal. 2012) is instructive.  Like this case, plaintiff's complaint in that case
14   alleged she was a resident of California and there was no dispute that the product in
15   question was marketed and sold in California.  Here, while the evidence concerning
16   Plaintiff's residence may be disputed, the circumstances of this matter as a whole reveal
17   strong California ties even though the accident itself happened to occur while Plaintiff
18   was staying in Costa Rica.  Therefore, while Hill may be even a clearer case since it was
19   unquestioned that plaintiff there was a California resident and the accident occurred in
20   California, this Court nonetheless finds the logic of Hill to be compelling.  Hill held that
21   California's interest, as the forum state, prevailed with regard to punitive damages,
22   finding that "the law of the forum will be displaced only if there is a compelling reason for
23   doing so.  It is applicable unless either the plaintiff or the defendant has been forced into
24   a forum devoid of any such contact that would justify application of its own law."  Id. at *7
25   (internal citations omitted).  Here, there is no dearth of contact supporting application of
26   California law.  The fact that BBW happens to be headquartered in Ohio and
27   manufactured and designed the candle in Ohio does not provide a compelling reason to
28   apply Ohio law where BBW chose to do business outside of Ohio.  Significantly, too, as

in <u>Scott</u>, <u>Hill</u> found no evidence to explain how another state's "interest would be advanced by shielding corporations from excessive liability in other states," or any evidence that the economic welfare of the other state "would be significantly impaired if California's punitive damages law were to apply here." <u>Id.</u> at * 8. That is the same argument being advanced here and it is unpersuasive.  As <u>Hill</u> noted, to the extent a company "presumably does business in all fifty states, [it] cannot reasonably contend it expected [the punitive damage law governing its headquarters] to apply in all instances where a consumer was injured by its product." <u>Id.</u> at * 11.

## CONCLUSION

For all the above reasons, Defendant Bath & Body Works' Motion to Apply Ohio Law to Plaintiff's Punitive Damages Claim (ECF No. 122) is DENIED.

IT IS SO ORDERED.

Dated:  August 8, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE