1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CRYSTAL LAKES,                              No.  2:16-cv-02989 MCE AC

12                  Plaintiff,

13          v.                                    ORDER

14    BATH & BODY WORKS, LLC,

15                  Defendant.

16

17          This case is before the court on plaintiff's motion for an order to show case re contempt

18    and for sanctions.  ECF No. 163.  Defendant has filed an opposition.  ECF No. 165.  This

19    discovery-related matter was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(1) and

20    by the District Judge at ECF No. 173.  The motion was taken under submission without oral

21    argument, pursuant to Local Rule 230(g).  ECF No. 164.  Upon review of the record and the

22    parties' briefs, the motion will be DENIED, for the following reasons.

23                          **I.     Relevant Background**

24          In this removed product liability action, plaintiff sues defendant Bath & Body Works,

25    LLC ("BBW") for damages arising from an incident in which a candle sold by defendant

26    "exploded" when she attempted to put it out, splashing and burning her with melted wax,

27    inflicting what she characterizes as significant injuries and permanent scarring.  ECF No. 2 at 9.

28    Plaintiff asserts claims of general negligence and products liability and seeks recovery of general

                                              1

1    and exemplary damages.  Id. at 9-13.  The specific product at issue is described as "a three-wick

2    Bath & Body Works Aromatherapy – Eucalyptus Spearmint scented candle purchased through

3    Amazon.com."  Id. at 18.  This case has been before the undersigned previously for discovery

4    disputes, and some of the background that follows is reprised from the court's previous order at

5    ECF No. 147, for the convenience of the parties.

6            In ruling on a motion to compel brought by plaintiff, the undersigned ordered on January

7    23, 2018 that, within 30 days:  "Defendant shall produce additional documents in response to

8    Requests for Production numbered 6, 8, 12, 13, 14, 15, 16, 18, 20 as to all three-wick candles

9    marketed by Defendant, and whose manufacture occurred in 2005 or later."  ECF No. 40 at 6.  As

10   relevant to the instant matter, Request for Production ("RFP") No. 8 requested all documents

11   "evidencing any failure analysis undertaken regarding" BBW candles; RFP No. 12 requested all

12   documents evidencing "any sudden, unexpected flaring" of BBW candles; and RFP No. 13

13   requested all documents evidencing "the cause of any sudden, unexpected flaring" of BBW

14   candles.  ECF No. 131-1 (Ex. 1) at 7-8.

15           On February 23, 2018, BBW produced what it characterizes as "nearly 100,000 pages of

16   documents, including the history of claims, claims files, and design documents including a

17   complete spreadsheet of consumer complaints relating to three-wick candles."  ECF No. 144 at 4.

18   On June 12 and July 9, 2018, plaintiff's counsel deposed two BBW engineers who testified that in

19   pre-production development testing in the previous 6-9 months, one three-wick "Leaves" scented

20   candle with a new fragrance flashed over.  Due to this flashover, engineers at BBW started a "root

21   cause analysis" which was still ongoing, and BBW did not launch, commercialize, mass produce,

22   or sell any Leaves candles with that fragrance.  ECF Nos. 131-2 at 10-11; 131-3 at 6-7, 9, 12.

23   Plaintiff then issued an additional set of production requests, seeking in RFP No. 66 documents

24   related to the "root cause" investigation the engineers had described.  ECF No. 131-5 (Ex. 5) at 6-

25   7.  On July 18, 2018, defendant responded, objecting to RFP No. 66, in part because the "'root

26   cause analysis' . . . is ongoing and there are no written findings or analyses yet.  Further, the

27   candle involved in the root cause analysis is a separate, unrelated product to the candle at issue in

28   this lawsuit."  Id.  On July 27, 2018, plaintiff submitted an initial motion for adverse inference

                                                     2

1   (ECF No. 95), and between July 27-29, 2018, BBW supplemented its response to RFP No. 66 by

2   producing 83 pages of documents related to the root cause investigation (ECF No. 131-6 (Ex. 6)).

3   ECF No. 144-2.  Non-expert discovery closed on July 30, 2018.  ECF No. 72.

4         On June 12, 2018, plaintiff's counsel also deposed a BBW quality engineer, who testified

5   that BBW was aware of flashovers involving a three-layer, three-wick "Pina Colada" scented

6   candle; that there was some internal discussion, possibly in 2016, about performing a chemical

7   analysis on that candle; and, although he was not completely certain, he believed a chemical

8   analysis was ultimately performed.  ECF No. 131-7 (Ex. 7) 8-9, 13-15.  Plaintiff contended this

9   was the first time she learned of any investigation into flashovers by the Pina Colada candle.

10  ECF No. 131 at 6.  Plaintiff confronted BBW about this testimony, and in October 2018 (two

11  months after the close of discovery), BBW produced 180 pages of documents relating to the Pina

12  Colada candle, which plaintiff alleges did not include any emails, discussion, or final report with

13  conclusions.  ECF Nos. 131 at 7; 144 at 7.  BBW stated that it produced these documents in good

14  faith, despite believing them to be unrelated to any of plaintiff's prior requests.  ECF No. 144 at

15  7.  An affidavit by Stephen Smith, the Vice President for Technical Services of BBW's parent

16  company, stated that "BBW, through counsel, has produced all responsive, non-privileged

17  documents relating to a root cause analysis of flashovers, candle fires or high flames, including

18  for the 'Pina Colada' candle.  There are no additional documents."  ECF No. 144-4 at 3.

19        In September 2018, plaintiff's counsel deposed a former BBW sales associate who

20  worked part-time in a BBW retail store in Pocatello, Idaho.  The associate testified that in late

21  2015 or early 2016, her store manager advised her not to buy any candles from the multi-layer,

22  three-wick line because they were exploding on people; some amount of time later, the store

23  manager told her they had been instructed to remove one fragrance of three-wick candle—a

24  yellow, coconut scented candle—because they were having issues with them catching fire or

25  exploding.  ECF No. 131-9 at 4-6.  Plaintiff's counsel then followed up with BBW's counsel to

26  request records related to the "recall" of this candle, which she believes to be the Pina Colada

27  candle.  ECF No. 131-10 (Ex. 10) at 4.  Plaintiff never served a formal discovery demand for

28  these records, and BBW has not provided them to date.  ECF Nos. 131 at 8, 144 at 7.  The Smith

3

1    Affidavit referenced above states that "BBW does not have any documents relating to Plaintiff's

2    contention of a 'silent recall' of any three-wick candles."  ECF No. 144-4 at 3.

3            Earlier in the litigation, plaintiff moved for sanctions based on defendant's resistance to

4    providing data regarding all of its candles.  Ultimately, a nearly 600-page spreadsheet of 1,280

5    candle flashover incidents was given to plaintiff's counsel.  ECF No. 85 at 12.  Still, on July 11,

6    2018, the court granted in part the motion for sanctions because defendant's positions in the

7    discovery dispute were not "substantially justified."  ECF Nos. 85, 111.

8            On February 27, 2019, plaintiff moved for evidentiary sanctions in the form of an adverse

9    inference jury instruction, pursuant to Rule 37(b)(2)(A).  ECF No. 131.  Plaintiff argued that

10   BBW had violated an earlier order, in part, by failing to produce all documents related to a Pina

11   Colada candle root cause investigation, which likewise constituted a "failure analysis," and by

12   failing to produce documents related to the 2015 or 2016 "silent recall" of the Pina Colada three-

13   wick candle, which would have contained materials evidencing "sudden, unexpected flaring."  Id.

14   In relevant part, defendant argued that the motion amounted to an untimely raised discovery

15   dispute, and  that BBW produced all non-privileged, responsive documents that it possesses

16   concerning the categories at issue.  ECF No. 144.  The motion was denied on May 15, 2019.  ECF

17   No. 147.

## II.    The Present Motion

19           Plaintiff now moves the court to issue an order to show cause to BBW as to why it should

20   not be held in contempt for making repeated misrepresentations to the court.  ECF No. 163 at 2.

21   Plaintiff "believes" that recent deposition testimony by the manager of the Pocatello, Idaho store

22   (referenced above), which was taken in another case, will show that BBW sent an e-mail directive

23   to its store managers throughout the country to remove the Pina Colada candle from the shelves,

24   effecting a "silent recall."  ECF No. 163 at 4-5.  Plaintiff requested a copy of the manager's

25   deposition testimony, and BBW has refused to provide it.  Id. at 5.  Plaintiff seeks an order from

26   this court requiring BBW to produce the manager's deposition transcript immediately.  Id.

27   Plaintiff "believes" that the transcript will show that defendant falsely represented in this case that

28   no such "silent recall" emails exist.  Id.

4

1

### III.   Applicable Legal Standards

2      Where contempt is sought to compensate an aggrieved party for failure of an adverse

3  party to comply with court orders, the asserted contempt is civil in nature.  United States v. Asay,

4  614 F.2d 655, 659 (9th Cir. 1980).  Civil contempt sanctions are intended to coerce compliance.

5  Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827 (1994).  To find

6  civil contempt: "... the court need only (1) have entered a clear and unambiguous order, (2) find it

7  established by clear and convincing evidence that the order was not complied with, and (3) find

8  that the alleged contemnor has not clearly established his inability to comply with the terms of the

9  order."  Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).  There need not be a willful

10  violation of the order in order for the court to find civil contempt.  See United States v. Laurins,

11  857 F.2d 529, 534 (9th Cir. 1988).  Violation of an order to provide or permit discovery may be

12  treated as contempt of court.  Rule 37(b)(2)(A)(vii), Fed. R. Civ. Proc.

13      Magistrate judges must refer contempt proceedings to district judges.  See 28 U.S.C. §

14  636(e); Bingman v. Ward, 100 F.3d 653, 656-57 (9th Cir. 1996).  A magistrate judge may

15  investigate whether further contempt proceedings are warranted and certify such facts to a district

16  judge.  28 U.S.C. § 636(e); see also Alcalde v. NAC Real Estate Invs. & Assignments, Inc., 580

17  F. Supp. 2d 969, 971 (C.D. Cal. Aug. 4, 2008).  A magistrate judge may not, however, conduct a

18  contempt hearing in a civil case absent consent jurisdiction.

19      The Federal Magistrates Act establishes a certification procedure whereby, upon

20  commission of an act constituting a civil contempt:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

27  28 U.S.C. § 636(e)(6)(B)(iii); see also Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 71-72

28  (E.D. N.Y. 2008).

5

1    Under this process, the magistrate judge functions to certify the facts and not to issue an

2  order of contempt.  Bingman, 100 F.3d at 656-57.  By certifying facts under Section 636(e), the

3  magistrate judge is simply attesting that further contempt proceedings are warranted.  See 28

4  U.S.C. § 636(e).  The magistrate judge's role is to determine whether the moving party can

5  adduce sufficient evidence to establish a prima facie case of contempt.  Church v. Steller, 35 F.

6  Supp. 2d 215 (N.D. N.Y. 1999).  Certification of facts is typically included in an order to show

7  cause why a contempt citation should not issue.  28 U.S.C. § 636(e); Alcalde, 580 F. Supp. 2d at

8  971 (citing Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial at ¶ 11:2316).

9    Upon certification of the facts supporting a finding of contempt, the district judge must

10  conduct a de novo hearing at which any disputed issues of fact are resolved and credibility

11  determinations are made.  See Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 907-08 (3d

12  Cir. 1992).  The party alleging civil contempt must demonstrate that the alleged contemnor

13  violated the court's order by "clear and convincing evidence," not merely a preponderance of the

14  evidence.  In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir.

15  1993).

16                                    **IV.    Discussion**

17    This court previously refused to order sanctions with respect to the non-production of

18  documents related to the alleged "silent recall," because plaintiff had failed to establish that any

19  such documents, or any such recall, existed.  The deposition testimony of a part-time salesclerk in

20  Idaho, who remembered her manager telling her that she had been told to remove from the store a

21  particular fragrance of three-wick candle, was found to be insufficient.  Following the close of

22  discovery, plaintiff has learned that there may after all exist evidence of such a silent recall.  With

23  the tools of discovery no longer available to her, plaintiff seeks this evidence in the context of a

24  motion for an Order to Show Cause re Contempt.

25    The undersigned understands plaintiff's concern, and does not suggest that her suspicions

26  are unreasonable.  However, an Order to Show Cause re Contempt does not issue on the basis of

27  reasonable suspicion.  To obtain a certification of facts regarding contempt, plaintiff must present

28  evidence establishing a prima facie case of contempt.  See Church, 35 F. Supp. 2d 215; see also

1    Proctor v. State Gov't of North Carolina, 830 F.2d 514, 521 (4th Cir. 1987) (certificate of facts

2    submitted by magistrate judge considered the statement of a prima facie case of contempt).  She

3    has not done so.

4         The undersigned has not hesitated to certify facts regarding contempt where disobedience

5    of court orders has been plain: failure to appear, failure to provide compelled discovery, failure to

6    perform remediation pursuant to an order granting injunctive relief, attorney abandonment of a

7    client.  Here, however, plaintiff has not presented a prima facie case of contempt.  The fact that an

8    individual has been deposed in another case who may have relevant information, coupled with

9    plaintiff's suspicions that this information will confirm her position and demonstrate defendant's

10   duplicity, falls far short of a prima facie case of misrepresentation.

11        The motion at bar presents no new information regarding the alleged "silent recall," and

12   no actual evidence with any probative value regarding the existence of such a recall.  Instead, the

13   motion *seeks* the information that plaintiff hopes will reveal the existence of a prima facie case.

14   Plaintiff provides no authority for the proposition that a motion to initiate contempt proceedings

15   may be used to obtain the evidence necessary to demonstrate contempt.  The court is aware of no

16   such authority.  The Ninth Circuit has rejected claims of a right to discovery even in the context

17   of an evidentiary hearing before the district judge regarding contempt.  See Ahearn ex rel.

18   N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4, 721 F.3d 1122, 1130 (9th Cir.

19   2013).[1]  If discovery need not be provided when a full-blown contempt hearing is held, it cannot

20   be required at the OSC stage.

21        In any event, the record before the court simply does not support a certification of facts

22   regarding contempt.  Plaintiff has made a record of her disbelief of defendant's representations,

23   but she has not presented any evidence or information that affirmatively indicates

24   misrepresentation.  There are, quite simply, no facts to certify that would establish contempt and

---

[1]  Ahearn and FTC v. Kuykendall, 371 F.3d 745 (10th Cir. 2004), on which it relied, rejected
complaints by defendant contemnors that they had been denied discovery in relation to the
findings that they were in contempt.  Alleged contemnors, who face sanctions, have due process
rights that may under some circumstances support discovery at the hearing stage.  See
Kuykendall, 371 F.3d at 754.  Plaintiffs seeking an OSC re contempt are not in an analogous
position.

1  thus support issuance of an OSC.  Because plaintiff has not met her burden of presenting a prima

2  facie case of contempt, the motion must be denied.

3                                        **V.     Conclusion**

4          For the foregoing reasons, the court hereby ORDERS that plaintiff's motion for an order

5  to show cause (ECF No. 163) is DENIED.

6          IT IS SO ORDERED.

7  DATED: July 28, 2020

8                                                     _____

9                                                     ALLISON CLAIRE
                                                      UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28